HERSEY, Judge.
Robert C. Roy and Joyce S. Roy, (the Roys), appeal a final judgment entered in favor of appellee, Barnett Bank of Palm Beach County (Barnett Bank or bank) in the amount of $86,712.27, representing amounts due under a promissory note upon which they were guarantors.
On August 13, 1982, Robert, C. Roy Agency, Inc., (corporation) executed a promissory note in the amount of $65,000 payable to Barnett Bank on or before February 9, 1983. The note obligated the corporation to make six monthly payments. The bank was given the right to accelerate the indebtedness upon default in any monthly payment or upon the insolvency or bankruptcy of the corporation. The Roys in their individual capacities guaranteed payment of the note. In pertinent part, the guaranty provided as follows:
FOR VALUE RECEIVED the undersigned jointly and severally, (if more than one) irrespective of the genuineness, validity, regularity or enforceability of this note, hereby indorses this note and unconditionally guarantees to any holder full payment of the indebtedness evidenced by this note when due by acceleration or otherwise and all other sums due hereunder, agrees to all the terms and conditions of this note, and consents that from time to time, without notice to the undersigned and without affecting any liability of the undersigned, (a) any collateral for payment of this note may be exchanged, released, surrendered, sold (by foreclosure or otherwise) applied or otherwise dealt with at the election of the holder, and (b) any time of payment under this note may be extended or accelerated in whole or in part, and this note may be renewed in whole or in part. The undersigned waives presentment, notice of dishonor and protest.
While not technically correct, we will use the terms insolvency, Chapter 11 arrangement and bankruptcy as synonyms for purposes of the following analysis.
In November of 1982 the corporation entered into bankruptcy under Chapter 11 of the United States Code. Thereafter, in March, the bank sued the Roys individually as guarantors because the corporation had not made any payments on the note.
In the bankruptcy proceedings a plan of reorganization had been accepted by Barnett Bank as one of the corporation’s creditors. The plan was approved by the bankruptcy court. Under the terms of the plan of reorganization, which went into effect the day prior to the final hearing in the present case, the corporation was to pay $3,500 per month for the first year and $4,500 per month thereafter until payment had been made in full.
The Roys’ attorney argued to the trial court that the debt was not yet due because according to the plan of reorganization partial payments only were due on a monthly basis. It was argued that the bank’s approval of the plan of reorganization extended the due date. On the other hand, Barnett Bank’s attorney argued that the Roys’ obligations are separate and distinct from the corporation’s obligations. After considering the arguments of counsel, the trial court entered a final judgment in favor of Barnett Bank basing its ruling on Anderson v. Tradewinds Enter. Corp., 241 So.2d 174 (Fla. 4th DCA 1970).
The question, then, is whether a creditor may accelerate an indebtedness (for nonpayment) as to a guarantor while extending the time for payment as to the principal debtor. It is also necessary to consider whether the fact that the extension results from the coercive effect of bankruptcy proceedings requires any different result.
We have no difficulty in resolving the initial inquiry based upon the law pertaining to contracts to guaranty performance of some obligation. The liability of a guarantor is activated by an event of default which cannot occur presently where the debtor has been given an extension of time which has not yet expired. This leaves the *498 more difficult issue of the effect of an arrangement in bankruptcy upon this fundamental principle. We do not find, and would not expect to find, its resolution in the bankruptcy statutes. Nor do we find a satisfactory answer in the Commercial Code.
Here the debtor-promisor-corporation became insolvent. This event of default activated the creditor-holder-bank’s right to accelerate and to proceed on the guaranty. The bank then proceeded alternatively (and in one sense inconsistently) to (1) attempt to accelerate as to the guarantors, while at the same time (2) granting an extension of time to pay (albeit under the coercion of imminent actual bankruptcy) to the principal obligor.
Some of the factors which appear to support a holding that the bank should be able to proceed immediately against the guarantors are these: (1) a creditor becomes involved in a Chapter 11 arrangement at the behest of the debtor and while the creditor may protest vigorously throughout, he may well be ultimately bound to a new and different scheme of payment of the indebtedness than was contemplated by the original intent of either party; (2) one purpose of a guaranty, particularly where closely held, newly formed, paper corporations are concerned, is to protect the creditor against the very eventuality which occurred here, insolvency and bankruptcy; (3) if the guaranty is to serve the purpose for which it was originally required by the creditor, then the guarantor, by subrogation to the rights of the creditor (after paying the indebtedness), should be the one to suffer the vicissitudes of an arrangement or ultimate bankruptcy rather than the creditor who exercised the foresight to require a guaranty.
It is true that under a contrary rule the creditor would eventually be entitled to recover from the guarantors any amount outstanding in the event of failure of the arrangement, but such a scheme of repayment is not what the creditor bargained for when the extension of credit was made.
It also seems to us that the guarantors have no cause for complaint. If there were no Chapter 11 arrangement the indebtedness would go into default and the guarantors would immediately be required to repay under the terms of their agreement. It is to be assumed that the consideration they received in exchange for their guaranty contained an element of value to compensate for the very eventuality which developed here: insolvency and acceleration. (The consideration was the loan to the corporation of which guarantors were the principals.)
Thus, we adopt the rule and hold in this case that an extension of time for the repayment of an indebtedness resulting from a Chapter 11 arrangement (whether or not the creditor expressly consents to the terms of the arrangement) has no effect upon the maturity of a preexisting guaranty of payment pertaining to that indebtedness absent a clear expression of contrary intention in the guaranty agreement.
We therefore affirm.
AFFIRMED.
LETTS, J., and RIVKIND, LEONARD, Associate Judge, concur.